IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


DAVID SYLVESTER LOGAN,
    Petitioner,

vs.                                      Case No.: 5:06cv10/SPM/EMT

WALTER A. McNEIL,[1]
    Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1).  Respondent filed an answer and relevant portions of the state court record (Doc. 11).  Petitioner filed a reply (Doc. 13).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are undisputed by the parties and established by the state court record (*see* Doc. 11, Exhibits).  On January 8, 1993, in the Circuit Court for Marion County, Florida, Case No. 1992-CF-0011119, Petitioner pled nolo contendere to

---

[1] Walter A. McNeil succeeded James McDonough as Secretary for the Department of Corrections ("DOC"), and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

one count of armed burglary of a dwelling and two counts of grand theft (Doc. 1 at 1).[2] He was sentenced as a habitual felony offender to a term of fifteen (15) years of incarceration on the burglary count and a term of ten (10) years of incarceration on each of the grand theft charges, with jail credit of 250 days (*see id.*).  The sentencing court ordered that all sentences to run concurrently (*see id.*).

Petitioner reached his tentative release date on November 16, 2002, through the accrual of actual time served and earned gain time, and was released from DOC custody on conditional release supervision, administered by the Florida Parole Commission (Commission), for the amount of time equal to the gain time he had accrued, or 1,650 days (*see* Doc. 1 at 4).  On November 17, 2003, Petitioner was arrested for violating the terms of his supervision (*id.*).  Petitioner's conditional release was apparently revoked, and he was returned to DOC custody.  The DOC forfeited the 1,650 days of gain time that Petitioner was previously awarded during the incarcerative portion of his sentence, thus requiring Petitioner to serve 1,650 days, less gain time that accrued from the date of his re-incarceration (*see id.*).

Petitioner filed the instant habeas action on January 5, 2006, and at that time, his tentative release date was February 8, 2008 (*see* Doc. 1 at 5, 6).  According to the DOC website, Petitioner was released on conditional release supervision on January 23, 2009, with a scheduled termination date of July 26, 2009.  *See* Florida Department of Corrections, http://www.dc.state.fl.us/ActiveOffenders/ (search logan david).

II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, section 2254(d) now provides:

---

[2]According to DOC records, the offense conduct occurred on May 4, 1992.  *See* Florida Department of Corrections, http://www.dc.state.fl.us/ActiveOffenders/ (search logan david).

Case No: 5:06cv10/SPM/EMT

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id., 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly

---

[3]Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but

unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion."  Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* Panetti v. Quarterman, --- U.S. --- 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

III.   PETITIONER'S CLAIMS

Petitioner claims that his re-incarceration in 2003 and his continued custody violates his constitutional rights (*see* Doc. 1 at 4–5, attached supporting memorandum).  Although his petition is not a model of clarity, he appears to assert the following specific claims:  (1) the Commission's imposition of conditional release supervision upon his release on November 16, 2002, increased his sentence, in violation of the separation of powers doctrine and due process principles; and (2) the Florida statute authorizing the DOC to forfeit earned gain time upon revocation of his conditional release, Florida Statutes section 944.28(1), violates due process and equal protection principles (*see id.*).[4]

Respondent contends Petitioner's claims are not exhausted because a state habeas petition was pending at the time he filed his federal petition; therefore, the instant petition should be dismissed (*see* Doc. 11 at 1–7).

The court notes that since the filing of Respondent's answer, there has been a final disposition of the state habeas action.  *See* Logan v. State, 964 So. 2d 209 (Fla. 5th DCA 2007).  In the state habeas proceeding, Petitioner presented the claims he raises in the instant federal petition (*see* Doc. 11, Ex. D).  The state court addressed only one of those claims in its written opinion, that is, Petitioner's claim that the Commission unlawfully increased his sentence by imposing conditional release supervision upon his release on November 16, 2002, and as to that claim, it is unclear whether the state court applied federal law.  Logan, 964 So. 2d at 210.  Regardless of whether the state court's decision is entitled to deference under § 2254(d), the undersigned concludes that Petitioner is not entitled to federal habeas relief because he has failed to demonstrate he is in custody "in violation of the Constitution or laws of the United States," *see* 28 U.S.C. § 2254(a), as discussed *infra*.

   A.   The Commission's imposition of conditional release supervision upon Petitioner's release on November 16, 2002, increased his sentence in violation of the separation of powers doctrine and due process principles.

Petitioner contends the Commission's imposition of conditional release supervision upon his release on November 16, 2002, increased his sentence in violation of separation of powers doctrine

---

[4]Although Petitioner did not articulate his claims as such on the petition form, the court gleaned these claims from a liberal construction of his petition and supporting memorandum, in light of his pro se status.

Case No:  5:06cv10/SPM/EMT

and due process principles because the sentence imposed by the court expired when he reached his tentative release date on November 16, 2002, through the accumulation of actual time served and earned gain time (Doc. 1 at 4–5, attached supporting memorandum).

The Florida statutes concerning conditional release provide as follows:

**944.291. Prisoner released by reason of gain-time allowances or attainment of provisional release date**

(1) Notwithstanding any provision of law to the contrary, a prisoner who has served his or her term or terms, less allowable gain-time deductions as provided by law, or who has attained his or her provisional release date shall, upon release, be placed under further supervision and control of the department.
. . . .
(2) Any prisoner who is convicted of a crime committed on or after October 1, 1988, which crime is contained in category 1, category 2, category 3, or category 4 of Rule 3.701 and Rule 3.988, Florida Rules of Criminal Procedure, and who has served at least one prior felony commitment at a state or federal correctional institution, or is sentenced as a habitual or violent habitual offender pursuant to s. 775.084, may only be released under conditional release supervision as described in chapter 947.

. . . .
**947.1405. Conditional release program**

(1) This section and s. 947.141 may be cited as the "Conditional Release Program Act."

(2) Any inmate who:

(a) Is convicted of a crime committed on or after October 1, 1988, . . . which crime is or was contained in category 1, category 2, category 3, or category 4 of Rule 3.701 and Rule 3.988, Florida Rules of Criminal Procedure (1993), and who has served at least one prior felony commitment at a state or federal correctional institution;

(b) Is sentenced as a habitual or violent habitual offender or a violent career criminal pursuant to s. 775.084; or

(c) Is found to be a sexual predator under s. 775.21 or former s. 775.23,

shall, upon reaching the tentative release date or provisional release date, whichever is earlier, as established by the Department of Corrections, be released under supervision subject to specified terms and conditions, . . .

Fla. Stat. §§ 944.291, 947.1405 (2008).  The provisions of these statutes relevant to the instant case have not been substantially changed since 1988.

The character of conditional release is, of course, defined by state law.  As to that, the Florida Supreme Court has said:  "[C]onditional release is not an increased punishment program at all, but rather an assistance program designed to 'help these former inmates in bridging the gap between prison and the outside world.'"  Mayes, 827 So. 2d at 971 (quoting Duncan v. Moore, 754 So. 2d 708, 710 (Fla. 2000)).

> [C]onditional release is not a form of sentence, and it is not imposed by a court. . . . Inmates who are subject to conditional release are identified and their placement on conditional release is required, not by the sentencing court, but by the Parole Commission.

Id.  As further explained in Mayes v. Moore,

> Prior to the 1988 enactment of the conditional release statute, prison inmates' sentences expired when, with the combination of actual time served and gain time, they were released from prison.  Since 1988, however, the Legislature has provided that certain inmates must remain under supervision, as determined by the commission, after release from prison for a period of time equal to the amount of gain time awarded.  This supervision has been provided under the terms of the statute, and thus, all have constructive knowledge of the applicable law.
>
> In addition, the conditional release statute specifically provides the commission with the authority to establish the terms and conditions of conditional release,[FN 3] and the general Parole Commission statute lists all the powers of the Parole Commission (including the establishment of terms and conditions) under its various programs such as control release, parole, and conditional release.[FN 4].  Further, the Florida Constitution gives the Parole Commission the authority to "grant paroles or conditional releases to persons under sentences for crime."  See art. IV, § 8, Fla. Const.  Accordingly, while the Legislature by statute has outlined some of the duties to be exercised by the commission, it is not the Legislature that gives the commission the power to place inmates on supervision; the power flows from the Florida Constitution.

827 So.2d at 971–72 (footnotes omitted).

As previously noted, Petitioner's offense was committed in 1992; therefore, his sentence did not expire when he reached his tentative release date.  The original sentence remained in effect, and when he reached that date, he was required to serve a portion of his sentence, equivalent to the amount of gain time he had earned, under supervision by the Commission and subject to the

Commission's conditions. Indeed, at the time of Petitioner's release on conditional release on November 16, 2002, he had actually served only ten and one-half (10 1/2) years of the fifteen-year sentence originally imposed by the sentencing court on January 8, 1993. Through the benefit of gain time, Petitioner was released from imprisonment 1,650 days (almost four and one-half (4 1/2) years) early to serve the rest of his sentence on conditional release supervision. Therefore, the Commission did not increase his sentence beyond the sentence originally imposed by the trial court or otherwise usurp the authority of the sentencing court. Additionally, as noted by the Florida Supreme Court in <u>Mayes</u>, the Commission's power to place Petitioner on conditional release flowed from the Florida Constitution. Therefore, there was no due process or separation of powers violation. Accordingly, Petitioner has failed to demonstrate that the Commission's releasing him on conditional release supervision violated due process or separation of powers principles.

    B.    <u>The Florida statute authorizing the DOC to forfeit earned gain time, Florida Statutes section 944.28(1), violates due process and equal protection.</u>

Petitioner claims that the Florida statute authorizing the DOC to forfeit earned gain time upon revocation of his conditional release, Florida Statutes section 944.28(1), violates due process principles because it permits forfeiture of a vested liberty interest without notice or hearing (Doc. 1 at 4–5, attached supporting memorandum).[5] He additionally claims that the statute violates the Equal Protection Clause because it provides pre-forfeiture notice and hearing to inmates accused of infractions of the DOC's disciplinary rules, but it allows forfeiture without notice or hearing upon revocation of an inmate's conditional release.

As previously discussed, since 1988, Florida law provided that for certain more "at risk" inmates, while gain time awards would shorten the length of their incarceration, they would have to remain under supervision after release from prison for a period of time equal to the amount of gain

---

[5]Florida Statutes § 944.28(1) provides:

(1) If a prisoner is convicted of escape, or if the clemency, conditional release as described in chapter 947, probation or community control as described in chapter 948, provisional release as described in s. 944.277, [FN1] parole or control release as described in s. 947.146 granted to him is revoked, the department may, without notice or hearing, declare a forfeiture of all gain-time earned according to the provisions of law by such prisoner prior to such escape or his release under such clemency, conditional release, probation, community control, provisional release, control release or parole. [FN2]

Fla. Stat. § 944.28(1) (2008) (footnotes omitted) (2008).

Case No: 5:06cv10/SPM/EMT

time awarded.  *See* Duncan, 754 So. 2d at 710 (citations omitted).  To encourage releasees to comply with the terms and conditions of supervision, the conditional release program provides that if the releasee fails to do so, the releasee will be returned to prison, and his gain time will be forfeited; thus retention of gain time is dependent not only upon satisfactory behavior while in prison but also upon satisfactory behavior while under supervision after release.  *Id.*  Therefore, Petitioner had only a conditional interest in his gain time upon his release on conditional release supervision; he did not have a vested liberty interest in that gain time.  Petitioner could retain his gain time only if he complied with the conditions under which it was given.

Furthermore, although Florida Statutes § 944.28(1) provides that the DOC may, without notice or hearing, declare a forfeiture of all gain-time earned by a prisoner prior to his release on conditional release supervision if his conditional release is revoked, Florida law expressly provides that prior to revocation of conditional release, a releasee must be afforded an opportunity for a hearing.  *See* Fla. Stat. § 947.141(3) (2008).  If the releasee elects to proceed with a hearing, Florida law provides that the he must receive written notice of the following:  (1) the alleged violation with which he is charged, (2) his right to be represented by counsel, (3) his right to be heard in person, (4) his right to secure, present, and compel the attendance of witnesses, (5) his right to produce documents on his own behalf, and (6) his right of access to all evidence used against him and to confront and cross-examine adverse witnesses.  *Id.*  At the revocation hearing, the State must present competent, substantial evidence that the releasee indeed violated the conditions of his supervision.  *See* Tedder v. Parole Comm'n, 842 So. 2d 1022, 1025–26 (Fla. 1st DCA 2003).  After the hearing, the presiding official must make findings of fact, and two members of the Commission must enter an order determining whether the charge has been sustained.  *See* Fla. Stat. § 947.141(4) (2008).  If the charge is sustained, the Commission may revoke conditional release and return the releasee to prison to serve the remainder of the sentence imposed.  *Id.*  Only then is the releasee's previously earned gain time forfeited.  Fla. Stat. §§ 947.141(6), 944.28(1) (2008).

This statutory process complies with the due process requirements set forth by the Supreme Court as applicable to parole revocation proceedings.  In Morrissey v. Brewer, the Supreme Court held that "minimum requirements of due process" include the following:

>   (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

408 U.S. 471, 489, 92 S. Ct. 2593, 2604, 33 L. Ed. 2d 484 (1972). The Court emphasized, "there is no thought to equate [the revocation hearing] to a criminal prosecution in any sense. . . . [T]he process should be flexible enough to consider evidence . . . that would not be admissible in an adversary criminal trial." Id.  Indeed, all that is required is "an informal hearing structured to assure that the finding of a[n] [early release] violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the [releasee's] behavior." Id.

Additionally, the minimal due process protections which attach to revocation proceedings do not place upon the prosecutor the burden of proving beyond a reasonable doubt that the defendant committed the alleged acts. Rather, the Commission may revoke conditional release when it is reasonably satisfied that the "conduct of the [releasee] has not been as good as required by the conditions of [release]." See United States v. Taylor, 931 F.2d 842, 848 (11th Cir. 1991); United States v. Penn, 721 F.2d 762 (11th Cir. 1983).

In the instant case, assuming arguendo that the minimum due process protections outlined in Morrissey apply to conditional release revocations, Petitioner does not allege that he did not receive the procedural protections afforded by § 947.141 prior to the revocation of his conditional release. Furthermore, the DOC was not statutorily authorized to forfeit his gain time unless and until the revocation occurred. See Fla. Stat. § 944.28(1). Therefore, Petitioner received due process prior to the forfeiture of his gain time. Accordingly, his challenge to § 944.28(1) on due process grounds is without merit.

Finally, Petitioner's equal protection challenge is without merit as conditional releasees are afforded the same if not even greater procedural due process prior to the forfeiture of gain time than inmates accused of disciplinary infractions. Therefore, Petitioner is not entitled to relief on his equal protection claim.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Walter A. McNeil is substituted for James McDonough as Respondent.

And it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this 4th day of February 2009.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.**  *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**